UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGOMED MUMAEV,<br><br>               Petitioner,<br><br>     v.<br><br>FERETI SEMAIA, *et al.*,<br><br>               Respondents. | Case No. 5:25-cv-03409-FLA (MAR)<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER [DKT. 6]** |

## RULING

On December 16, 2025, Petitioner Magomed Mumaev ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241 ("§ 2241"), challenging his detention as a violation of the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and applicable regulations. Dkt. 1 ("Pet.").

On December 27, 2025, Petitioner filed the subject Motion for Temporary Restraining Order ("Motion"), requesting the court issue an order: (1) barring Respondents from removing Petitioner from this court's jurisdiction without notice and approval by the court; (2) requiring Respondents to release Petitioner from custody immediately under the same conditions as he was released prior to his re-

detention; (3) requiring Respondents to return to Petitioner all property confiscated from him when he was arrested and processed into detention; (4) enjoining and restraining Respondents from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral fact-finder where Respondents show (a) there are material changed circumstances which demonstrate there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) clear and convincing evidence that Petitioner poses a danger to the community or a flight risk; and (5) waiving the bond requirements of Fed. R. Civ. P. 65(c). Dkt. 6 ("Mot.") at 1–2.[1] Respondents oppose the Motion. Dkt. 8 ("Opp'n"). On January 29, 2026, the court took the Motion under submission, finding the matter appropriate for resolution without oral argument. Dkt. 11; *see also* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS the Motion and ORDERS Respondents to release Petitioner from custody immediately and return all property to Petitioner that was confiscated from him when he was arrested and processed into detention. Respondents are temporarily RESTRAINED from re-arresting or re-detaining Petitioner during the pendency of the subject *habeas* action absent express authorization by this court. The court exercises its discretion and waives the posting of a bond. *See* Fed. R. Civ. P. 65(c).

## **BACKGROUND**

Petitioner is a citizen of the Russian Federation ("Russia") who entered the United States on May 17, 2023, and was paroled into the United States by U. S. Customs and Border Protection ("CBP") under the "DT" class of admission, to allow him to pursue his asylum claim.[2] Dkt. 1-2. The U.S. Department of Homeland

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

[2] A "DT" class of admission is a type of humanitarian parole. *Noori v. LaRose*, --- F. Supp. 3d ---, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025).

2

1  Security ("DHS") initiated removal proceedings against Petitioner that same day.
2  Dkt. 1-3.  On February 12, 2024, Petitioner filed a Form I-589 Application for
3  Asylum and for Withholding of Removal ("Asylum Application") with the U.S.
4  Department of Justice, Executive Office of Immigration Review, which remains
5  pending.  Dkt. 1-4.

6       On April 3, 2025, Petitioner presented himself to DHS, as instructed in a G-56
7  Call-In Letter.  Dkt. 6-2 at 7.  This was his twenty-fifth birthday.  *Id.* at 6.  At
8  approximately 10:00 a.m., the Los Angeles Non-Detained unit officers conducted an
9  interview with Petitioner, and at 10:05 a.m., U.S. Immigration and Customs
10 Enforcement ("ICE") officers took Petitioner into custody for further processing and
11 re-detention.  *Id.* at 7.  According to Petitioner, he has had no derogatory encounters
12 with law enforcement in the United States and was never arrested or charged with any
13 crime or violation of law, prior to his current arrest and re-detention.  Pet. ¶ 27.
14 Petitioner has no known criminal history.  Dkt. 6-2 at 8.

15      Approximately six months later, on October 9, 2025, the Immigration Court
16 held a custody redetermination hearing based on Petitioner's prolonged detention.
17 Dkt. 6-4 at 7–8 (citing *Rodriguez v. Holder*, Case No. 2:07-cv-03239-TJH (RNBx),
18 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013)).  The Immigration Court subsequently
19 issued a written order denying Petitioner's request for release from custody, finding
20 the DHS met its burden to establish, by clear and convincing evidence, that continued
21 detention was warranted because "[t]he record *supports* a finding of such flight risk
22 that no amount of bond and combination of other conditions of release would be
23 appropriate."  *Id.* at 9, 11–12 (italics in original).  On November 7, 2025, Petitioner
24 appealed the Immigration Court's custody determination to the Board of Immigration
25 Appeals ("BIA").  Dkt. 6-5.
26 / / /
27 / / /
28 / / /

# DISCUSSION

## I. *Habeas* Jurisdiction and Administrative Exhaustion

As an initial matter, Respondents contend this court lacks jurisdiction to consider Petitioner's request because: (1) the Petition is primarily a challenge to the Immigration Court's bond determination at the October 9, 2025 hearing, and (2) Petitioner must first exhaust administrative remedies by completing the appeal process with the BIA before seeking *habeas* relief. Opp'n at 2, 5–7. Petitioner argues the court has *habeas* jurisdiction to review the constitutionality and legality of his warrantless arrest, and his re-detention and the revocation of his parole without notice and a hearing before a neutral arbiter. Mot. at 12; Dkt. 10 ("Reply") at 3–6.

8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241." *Id.* (cleaned up).

Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested, had his parole revoked, and was re-detained. Pet. ¶¶ 35–104. This court has *habeas* jurisdiction under § 2241 to consider these claims and will not deny the Motion on this basis. *See Hernandez*, 872 F.3d at 987; *Noori*, 2025 WL 2800149, at *5–8 (finding district court had *habeas* jurisdiction to consider a petition challenging the lawfulness of the detention and revocation of parole of an asylum seeker).

## II. Legal Standard

"[T]he usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Tanner Motor Livery,*

4

1  *Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963).  "The status quo is the last
2  uncontested status which preceded the pending controversy." *Id.* at 809 (citation and
3  quotation marks omitted).
4        A plaintiff seeking a preliminary injunction or temporary restraining order
5  "must establish that he is likely to succeed on the merits, that he is likely to suffer
6  irreparable harm in the absence of preliminary relief, that the balance of equities tips
7  in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def.*
8  *Council, Inc.*, 555 U.S. 7, 20 (2008).  Alternatively, "'serious questions going to the
9  merits' and a hardship balance that tips sharply toward the plaintiff can support
10 issuance of an injunction, assuming the other two elements of the *Winter* test are also
11 met."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).  A
12 "serious question" is one on which the movant "has a fair chance of success on the
13 merits."  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir.
14 1984).
15       The Ninth Circuit follows a "sliding scale" approach to the four preliminary
16 injunction elements, such that "a stronger showing of one element may offset a
17 weaker showing of another, as long as plaintiffs establish that irreparable harm is
18 likely."  *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (cleaned up).  The first factor,
19 "likelihood of success on the merits[,] is the most import factor—and even more so
20 when a constitutional injury is alleged."  *Matsumoto v. Labrador*, 122 F.4th 787, 804
21 (9th Cir. 2024); *see also Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023)) ("If a
22 movant makes a sufficient demonstration on all four Winter factors …, a court must
23 not shrink from its obligation to enforce his constitutional rights, regardless of the
24 constitutional right at issue.") (cleaned up).
25 **III.  Analysis**
26     **A.**    **Apprehension, Detention, and Parole of Aliens under the INA**
27       "An arriving noncitizen seeking admission into the United States at a U.S. Port
28 of Entry is 'processed either through expedited removal proceedings or through

regular removal proceedings.'" *Noori*, 2025 WL 2800149, at *3 (quoting *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019)). "The regular removal procedure is also known as 'section 240 proceedings[,]' … [which] involve an evidentiary hearing before an immigration judge and the ability for the individual to apply for asylum if he would be persecuted upon return to his home country." *Id.* (citing 8 U.S.C. § 1229a(a)(1), (b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)). "Noncitizens seeking asylum are guaranteed due process under the 5th Amendment throughout this process." *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

8 U.S.C. § 1226 governs the apprehension and detention of aliens, and states in relevant part:

> **(a) Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) [detention of criminal aliens] and pending such decision, the Attorney General—
>
>> (1) may continue to detain the arrested alien; and
>>
>> (2) may release the alien on—
>>
>>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>>
>>> (B) conditional parole; but
>>
>> (3) may not provide the alien with work authorization …, unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

"Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release [a non-criminal alien], under the conditions at [§ 1226(a)(2) and (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is

likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).[3]

Pursuant to 8 U.S.C. § 1182(d)(5)(A) ("§ 1182(d)(5)(A)"), "[t]he Secretary of Homeland Security may, … in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States," with exceptions not applicable here.[4]  "[S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

Termination of parole is governed by § 212.5(e), which states in relevant part:

> (1) Automatic.  Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.

> (2)(i) On notice.  In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.  …

8 C.F.R. § 212.5(e)(1)–(2)(i).

/ / /

---

[3] Pursuant to 8 C.F.R. § 1236.1(b)(1), "[a] warrant of arrest may be issued only by those immigration officers listed in [8 C.F.R. § 287.5(e)(2)]."

[4] 8 C.F.R. § 212.5(a) identifies additional categories of officials who may exercise the Secretary's authority to grant or deny parole.

7

### B. *Winter* Factors as to Petitioner's Due Process Claim

A writ of *habeas corpus* may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 473 (2004). A petitioner "bears the burden of demonstrating that he is in custody in violation of the Constitution or laws or treaties of the United States." *Noori*, 2025 WL 2800149, at *5 (cleaned up).

Petitioner argues his arrest, the revocation of his parole, and his re-detention violate his procedural due process rights under the Fifth Amendment because he was denied prior notice and an opportunity to be heard before a neutral arbiter. Pet. ¶¶ 35–56; Mot. at 7–11. Respondents respond that Petitioner does not, and cannot, identify any due process violation that justifies *habeas* relief since he was given a bond hearing on October 9, 2025. Opp'n at 8.

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. Although "[the] Fifth Amendment's protections do not extend to aliens outside the territorial boundaries [of the United States,] … once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

///

8

1    "Due process is flexible and calls for such procedural protections as the
2    particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)
3    (cleaned up).  Courts weigh three factors to determine what procedural protections the
4    Constitution requires in a particular case: "(1) the private interest that will be affected
5    by the official action; (2) the risk of an erroneous deprivation of such interest through
6    the procedures used, and probable value, if any, of additional procedural safeguards;
7    and (3) the Government's interest, including the fiscal and administrative burdens that
8    the additional or substitute procedures would entail." *Id.* at 334–35; *see also*
9    *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  "Applying this test, the [Supreme
10   Court] usually has held that the Constitution requires some kind of a hearing *before*
11   the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127
12   (emphasis in original) (collecting cases).

13   The first *Mathews* factor is Petitioner's private interest.  "Freedom from
14   imprisonment—from government custody, detention, or other forms of physical
15   restraint—lies at the heart of the liberty that [the Due Process] Clause protects."
16   *Zadvydas*, 533 U.S. at 690.[5]  "The Supreme Court has repeatedly recognized that
17   individuals who have been released from custody, even where such release is
18   conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F.
19   Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S.
20   471, 482 (1972) (finding prison parolees have a due process liberty interest)).

21   Because Petitioner was initially paroled into this country for the purpose of
22   seeking asylum, Dkt. 1-2, he was present in the country lawfully and has a significant

---

[5] The Supreme Court "has said that government detention violates [the Due Process] Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up).  Immigration removal proceedings are civil, not criminal, and courts assume they are nonpunitive in purpose and effect. *Id.*

9

liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See Morrissey*, 408 U.S. at 481–82 ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. … [T]he liberty [of a parolee] is valuable and must be seen as within the protection of the Fourteenth Amendment."); *Becerra*, 787 F. Supp. 3d at 1093.

The second *Mathews* factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The INA grants the Secretary of Homeland Security and other authorized officials broad discretion to grant or deny parole. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(a). That discretion, however, is not unbounded and requires, at minimum, compliance with the procedural requirements of the INA.

Based on the undisputed facts in the record, the court finds the risk of erroneous deprivation is considerable here. Petitioner was neither arrested pursuant to a warrant, as required by 8 U.S.C. § 1226(a), nor provided written notice of the termination of his parole and an opportunity to be heard before he was re-detained, as required by 8 C.F.R. § 212(e)(2). Respondents have not identified any evidence to suggest the purpose for which parole was authorized (*i.e.*, release on humanitarian grounds while Petitioner's Asylum Application was pending) has been accomplished, or that a qualifying official has determined that neither humanitarian reasons nor public benefit warrant Petitioner's continued presence in the United States, as required under 8 C.F.R. § 212.5(e)(2). Additionally, Respondents held Petitioner in detention for over six months before he received a bond hearing, and he remains detained in their custody to this day—even though his parole does not appear to have been revoked

validly. Petitioner, thus, appears to have been deprived of his liberty interest erroneously based on Respondents' failure to comply with the INA, applicable federal regulations, and Petitioner's rights under the Due Process Clause.

Respondents argue due process was satisfied because Petitioner was granted a bond hearing before the Immigration Court on October 9, 2025. Opp'n at 2. The Immigration Court's decision to deny bond six months *after* Petitioner was arrested and re-detained, however, cannot support Petitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of Petitioner's due process rights and, thus, invalid.

Furthermore, the Immigration Court's decision appears to violate the APA, which provides in relevant part: "[a] reviewing court shall … (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). "[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983)). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (quotation marks and citations omitted).

Respondents offer no explanation for why they chose to: (1) arrest, revoke the parole of, and re-detain Petitioner without complying with the requirements of 8 U.S.C. § 1226(a) and 8 C.F.R. § 212.5(e)(2); (2) detain Petitioner for six months without providing any hearing; and (3) provide Petitioner with only a bond hearing pursuant to § 1226(a)(2), without considering or addressing why he was not entitled to remain free on parole in light of his "DT" class of admission. Respondents, likewise, do not establish the Immigration Court considered the validity of Petitioner's detention before denying bond—let alone whether a material change in his

circumstances warranted the *de facto* revocation of his parole and re-detention. *See* Opp'n. Respondents' conduct and the Immigration Court's determination, thus, appear to violate the APA. *See Y-Z-L-H v. Bostok*, 792 F. Supp. 3d 1123, 1146–47 (D. Or. 2025) (finding Respondents' termination of an asylum seeker's parole arbitrary and capricious in violation of the APA, based on their failure to provide any reason for the change to terminate petitioner's parole).

Accordingly, the court finds the risk of an erroneous deprivation of Petitioner's liberty interest was substantial based on Respondents' failure to comply with the procedural requirements of the INA and associated federal regulations when he was arrested, had his parole revoked, and was re-detained.

The final *Mathews* factor is the government's interest. Respondents fail to establish the government has any interest in allowing Respondents to arrest Petitioner, revoke his parole, and re-detain him without complying with the requirements of §§ 1226(a) and 212(e)(2). Respondents, similarly, do not offer any argument or explanation for why Petitioner could not have been provided with notice and an opportunity to be heard *before* his parole was revoked and he was re-detained, as is generally required under *Zinermon*, 494 U.S. at 127. Respondents, thus, fail to establish the government has any interest in Petitioner's continued detention.

After considering all three *Mathews* factors, the court finds Petitioner has met his burden to demonstrate a reasonable likelihood of success on the merits of his claims.[6] The analysis of the remaining *Winter* factors (irreparable harm in the absence of preliminary relief, the balance of equities, and the public interest)[7] overlaps with

---

[6] Having found Respondents failed to comply with the requirements of 8 U.S.C. § 1226(a) and 8 C.F.R. § 212(e)(2), the court need not address whether due process requires additional procedural safeguards.

[7] Respondents argue Petitioner's immediate release would not be the appropriate remedy to any legal deficiency in his detention and bail proceedings, as evidence including inconsistencies in forms he submitted "shows that he is a *flight risk* in that

12

the *Mathews* analysis and favors granting Petitioner's request for injunctive relief and Motion. *See Matsumoto*, 122 F.4th at 804.

## **CONCLUSION**

For the reasons stated, the court GRANTS the Motion and ORDERS Respondents to:

(1) release Petitioner immediately under the same conditions as he was released prior to his re-detention;

(2) return all property to Petitioner that was confiscated from him when he was arrested and processed into detention; and

(3) file a statement with the court within one business day of Petitioner's release, attesting to Respondents' compliance with this Order.

To preserve the court's jurisdiction, Respondents are temporarily RESTRAINED from transferring, relocating, or removing Petitioner outside the Central District of California pending final resolution of this case or further order of the court.

Respondents are additionally temporarily RESTRAINED from re-arresting Petitioner, revoking his parole, and/or re-detaining him during the pendency of the subject *habeas* action, absent express authorization by this court.

/ / /

/ / /

---

he is very unlikely to comply with the rules." Opp'n at 8 (italics in original). Respondents do not cite or identify any evidence to establish Petitioner failed to appear for any immigration proceeding, was not complying with his conditions of parole, or that his circumstances have changed materially to increase his flight risk from when he was first paroled into this country. Instead, Petitioner was arrested when he presented himself to DHS on his twenty-fifth birthday, as instructed in a G-56 Call-In Letter, in apparent compliance with his conditions of parole. Dkt. 6-2 at 6–7. Respondents, thus, fail to establish Petitioner's release from detention is not necessary to preserve the *status quo ante litem* pending a determination of the action on the merits. *See Tanner Motor*, 316 F.2d at 808.

13

     The court exercises its discretion and waives the posting of a bond. *See* Fed. R. Civ. P. 65(c).

     IT IS SO ORDERED.

Dated: February 20, 2026

FERNANDO L. AENLLE-ROCHA
United States District Judge